Filed 3/8/24  P. v. Coffman CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062256 |
| v. | (Super. Ct. No. C-65640) |
| CYNTHIA LYNN COFFMAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*　　　\*　　　\*

A jury convicted defendant Cynthia Lynn Coffman of one count of first degree murder (Pen. Code, § 187; count 1),[1] one count of kidnapping (§ 207; count 2), one count of burglary (§ 459; count 3), and one count of robbery (§ 211; count 4). The jury also found true the special circumstance that the murder occurred during the kidnapping and robbery (§ 190.2, subds. (a)(17)(i), (ii)), and that defendant was armed with a firearm during the kidnapping, burglary, and robbery.[2]

The court sentenced defendant to life in prison without the possibility of parole on count 1 plus a consecutive determinate term of 10 years 8 months as follows: (1) eight years on count 2; (2) eight months on count 3; (3) one year on count 4; and (4) one year for a firearm enhancement. The court stayed sentence on the remaining firearm enhancements pursuant to section 654.

In 1995, another panel of this court affirmed the judgment. (*People v. Coffman* (Jan. 31, 1994, G013467 [nonpub. opn.].) In March 2022, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[3]

The trial court summarily denied defendant's petition for resentencing, and defendant timely filed a notice of appeal. Consistent with *Anders v. California* (1967) 386 U.S. 738, appointed counsel identified the following issues to assist in our independent review: (1) whether the record establishes defendant is ineligible for resentencing as a matter of law; (2) whether CALJIC No. 8.81.17, which did not refer to the requisite mental state for the special circumstance finding, provided the jury with an

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The jury found defendant was not guilty of rape by force and further found the murder special circumstance allegations as to burglary and rape by force to be not true.

[3] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

2

alternative basis for finding the special circumstances true; and (3) whether defendant was required to have assisted in the killing itself and not just the underlying felony. Defendant was given the opportunity to file written argument on her own behalf, and she did. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 231-232.)

We have examined the entire record and have not found an arguable issue on appeal. Accordingly, we affirm the postjudgment order.

# FACTS[4]

*Relevant Background*

"When Lynell Murray failed to return from work on the night of November 12, 1986, her boyfriend, Robert Whitecotton, became concerned and went to the dry cleaning business where she cashiered. Murray's car was in the parking lot, but the cleaners was locked and no one was around. Whitecotton summoned help and soon discovered the cleaners had been burglarized and ransacked.

"There apparently were no witnesses to the burglary. However, Coffman and James Marlow were seen near the cleaners minutes before its scheduled closing time of 6:30 p.m. About 6 p.m. Lynda Schaefer saw the two kissing in an alley behind the cleaners, and 20 minutes later Coffman approached Linda Whitlake in the parking lot and asked her for a ride. After Whitlake agreed, Coffman walked over to Marlow, who was inside a small white car. Whitlake did not anticipate giving Marlow a ride. She was about to tell Coffman she had changed her mind when Coffman said they no longer wanted assistance.

---

[4]    We provide a summary of the relevant facts from this court's prior opinion, which defendant has also adopted for her statement of facts. (*People v. Coffman*, *supra*, G013467.) For ease of reference, we omit any footnotes in the prior opinion as they are not pertinent to this appeal.

3

"At 7:13 p.m. Coffman checked into a Huntington Beach hotel using Murray's name and credit card. She was wearing a dress taken from the cleaners. An hour later Coffman withdrew $140 from Murray's bank account at an automated teller machine in Corona Del Mar.

"Later that evening Coffman and Marlow checked into the Compri Hotel in Ontario and had supper. During the meal, the two were affectionate and shared wine. Coffman picked up the dinner tab with Murray's credit card.

"The next morning a maid found Murray in the bathroom of Coffman's Huntington Beach hotel suite. She was bound and gagged and had been strangled with a strip of towel. Her widely-bruised body was strewn across the toilet, and her head was face down in shallow water in the tub. It also appeared someone had urinated on Murray.

"Coffman and Marlow were arrested near Big Bear the following day. Coffman had a loaded revolver in her purse, as well as various identification cards and an earring belonging to Murray. She also had credit card receipts containing Murray's forged signature.

"Police found a white Honda belonging to Corrina Novis in Big Bear that night. Coffman's and Marlow's fingerprints were on the car, and items from Murray's dry cleaning store were found nearby. The next morning Coffman led police to a Fontana vineyard where Novis' strangled body was found in a shallow grave.

"Coffman told a jailhouse informant she and Marlow abducted Murray from the cleaners and took about $100 from the register. They then took Murray to the hotel room, put tape over her face, and strangled her with a towel. Coffman said she wrapped a towel around Murray's neck and pulled, but she "wasn't strong enough to do it herself, so . . . Marlow got on one side and she got on the other, and they pulled together until blood came from the ears . . . and she turned purple." Afterwards, Coffman put Murray's head under water in the bathtub while Marlow urinated on Murray. Coffman

4

told the informant "you can't leave any victim alive." She never indicated Marlow had forced her to do anything.

"However, at trial Coffman testified she never intended to kill Murray, but simply went along with Marlow because she was afraid of him. According to Coffman, her seven-month relationship with Marlow was marked by physical, sexual, and emotional abuse. Among other things, Marlow sodomized Coffman, stabbed her leg, burned her face with a cigarette, and fired a gun near her head. Marlow also hit Coffman frequently and accused her of infidelity. Yet Marlow offered his friends sexual favors from Coffman and threatened harm to her and her family if she ever left him. Coffman took Marlow's threats seriously because she had seen Marlow kill a man in Kentucky for money.

"Coffman testified it was Marlow's idea to kill Murray. At his direction, Coffman wrapped a strip of towel around Murray's neck and applied pressure. However, she let go and told Marlow she could not go through with it. When Marlow insisted, Coffman pulled the towel a couple more times before feigning a fingernail problem. At that point, Marlow took over and strangled Murray.

"In rebuttal, the People presented a video tape of Coffman and Marlow fraternizing before a court hearing to show she was not afraid of him. The prosecution also presented evidence from Dr. Craig Rath, who interviewed and testified for Coffman during the Novis trial. Dr. Rath could not fully remember his interviews with Coffman. However, he recalled testifying in the Novis trial that Coffman once stated she was jealous enough of Murray to strangle her." (*People v. Coffman*, *supra*, G013467.)

*Defendant's Petition*

In her petition for resentencing, defendant averred: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences

5

doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine [¶] . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The court appointed counsel for defendant, scheduled a prima facie hearing, and received briefing from the prosecution. At the scheduled hearing, defendant moved to withdraw her petition without prejudice, which the court denied. The court then continued the prima facie hearing to allow time for defendant to file a reply brief. Defendant subsequently filed a reply brief wherein she renewed her request to withdraw the petition and alternatively argued in support of the petition.

After the prima facie hearing, the court denied defendant's request to withdraw her petition and the petition itself. In a statement of decision, the court held the jury instructions and verdict forms established defendant was ineligible for relief because the jury could only have convicted her as a direct aider and abettor or the direct perpetrator.

The court indicated the jury received the following three instructions. First, pursuant to CALJIC No. 8.21 (first degree felony murder), the jury was instructed: "'The unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs [during the commission or attempted commission of the crime] of robbery . . . rape by force . . . or burglary . . . is murder of the first degree when the perpetrator had the specific intent to commit such crime.'" Second, pursuant to CALJIC No. 8.27 (first degree felony murder as an aider and abettor), the jury was instructed: "'If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of robbery, rape by force, or burglary, all persons, who either directly and actively commit the act constituting such crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote,

6

encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental.'" Finally, the jury was instructed with CALJIC No. 8.80.1 regarding the special circumstance that defendant committed the murder during the commission of the robbery and kidnapping. According to the court, the latter instructed the jury it had to find defendant was the actual killer, aider and abettor, or coconspirator who acted with intent to kill to find the special circumstance true. Because the jury was not instructed as to coconspirator liability, the natural and probable consequences doctrine, or accomplice liability as a major participant with reckless indifference to human life, the court concluded the jury convicted defendant as the direct perpetrator or aider and abettor. Given the special circumstance instruction, the court also concluded the jury must have found beyond a reasonable doubt that defendant acted with the intent to kill.

Defendant timely filed a notice of appeal.

## DISCUSSION

Relief under section 1172.6 is restricted to those convicted of murder "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (*Id.*, subd. (a)(1).) "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

7

In determining whether the petitioner has made a prima facie case for relief under section 1172.6, the trial court may rely on the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 970-971.) The record of conviction includes the court's own documents, including the trial evidence, the jury instructions, and closing arguments of counsel. (*People v. Lopez*, *supra*, 78 Cal.App.5th at p. 13.) As our Supreme Court explained, "The record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)

Here, the information charged both defendant and Marlow as the actual killers. Among other things, the information alleged "the murder of Lynell Murray . . . was committed by defendant . . . with the intent to kill, while the defendant was engaged in the attempted commission and commission of the crime of robbery . . . or the immediate flight after the commission of the crime of robbery . . . ." Likewise, the information alleged defendant committed the murder with the intent to kill while engaged in the commission of the crime of kidnapping.

The jury instructions included two theories of first degree murder: deliberate and premeditated murder and felony murder. The jury was instructed under, inter alia, CALJIC Nos. 3.01 (aiding and abetting), 8.20 (deliberate and premeditated murder), 8.21 (first degree felony murder), 8.27 (first degree felony murder as an aider and abettor), and 8.80.1 (special circumstance felony murder during the commission of a robbery, kidnapping, rape by force, or burglary).

The special circumstance instructions (CALJIC No. 8.80.1) provided in relevant part: "Whether you find *the defendant was a) the actual killer, or b) an aider and abettor, or c) a coconspirator* you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant, *with the intent to kill, actually killed, or with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the*

8

*murder in the first degree*." (Italics added.) The special circumstance findings in this case therefore indicate the jury necessarily found defendant intended to kill and actually killed the victim or aided and abetted in the murder with the intent to kill. The jury also was not instructed on coconspirator liability so the jury must have found defendant was either the actual killer or aided and abetted in the murder with the intent to kill.

We further note the jury was not instructed on the natural and probable consequences doctrine or accomplice liability as a major participant with reckless indifference to human life. The special circumstance instructions similarly did not reference the "major participant with reckless indifference to human life" standard applicable in felony murders. The jury accordingly did not convict defendant based on her involvement in the underlying felonies without finding she acted with intent to kill. For the foregoing reasons, defendant is ineligible for resentencing as a matter of law.

Our Supreme Court's decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) does not change our analysis. In *Curiel*, our Supreme Court held a jury's finding on a gang-murder special circumstance that the defendant intended to kill did not establish the defendant was ineligible for resentencing as a matter of law. In reaching this conclusion, the court emphasized that "the jury was instructed on the natural and probable consequences doctrine" so "the jury was required to find only that [the defendant] knew that [the actual killer] intended to commit one of the underlying target offenses [i.e., disturbing the peace or carrying a concealed firearm by a gang member] and that [the defendant] intended to aid him in *that* offense, not murder." (*Id.* at p. 468.) The court added: "While the jury separately found [the defendant] intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder." (*Ibid.*)

*Curiel* is different from defendant's case. While the jury in *Curiel* was instructed on the natural and probable consequences doctrine, defendant's jury was not. And here, based on the record of conviction, the jury necessarily found defendant intended to kill and actually killed the victim or aided and abetted in the murder with the intent to kill. For these reasons, *Curiel* is inapposite.

As noted *ante*, appointed counsel questions whether the record establishes defendant is ineligible for resentencing as a matter of law and whether defendant was required to have assisted in the killing itself. We have addressed these issues in our discussion above. Appointed counsel also questions whether CALJIC No. 8.81.17, which did not refer to the requisite mental state for the special circumstance finding, provided the jury with an alternative basis for finding the special circumstances true. The jury was instructed under CALJIC No. 8.81.17 as follows: "To find . . . the special circumstances . . . true, it must be proved: [¶] 1a. The murder was committed while the defendant was engaged in . . . the commission of Robbery or Kidnapping . . . ; or [¶] 1b. The murder was committed during the immediate flight after the Robbery or Kidnapping . . . either committed by the defendant or to which crime the defendant was an aider and abettor; and [¶] 2. The murder was committed in order to carry out or advance the commission of the crime of Robbery or Kidnapping . . . or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance . . . is not established if the Robbery, or Kidnapping . . . was merely incidental to the commission of the murder." Contrary to appointed counsel's suggestion, this instruction does not conflict with CALJIC No. 8.80.1. "The two instructions, read together, outline respectively the relationship of the murder to the predicate felony (CALJIC No. 8.81.17) and the mental state required for either an actual killer or an aider and abettor in the murder (CALJIC No. 8.80.1)." (*People v. Pearson* (2012) 53 Cal.4th 306, 324 [finding the two instructions did not conflict and instead supplemented each other].)

10

In her supplemental brief, defendant similarly contends CALJIC Nos. 8.80.1 and 8.81.17 were potentially conflicting because the former required the jurors find the intent to kill while the latter did not. We disagree for the reasons discussed above. Defendant also argues the jury instructions allowed the jury to find her guilty "based on a felony murder theory simply by assisting in the commission of the underlying felonies of burglary and robbery." She claims that "[t]here was no jury instruction or jury verdict or finding . . . that demanded the jury find [she] personally killed or assisted her former codefendant (Marlow) in the commission of the killing." This argument was rejected in *People v. Lopez* (2023) 88 Cal.App.5th 566. In *Lopez*, the court found "no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill [No.] 1437— 'aiding and abetting the underlying felony or attempted felony that results in the murder.'" (*Id.* at p. 578.) In any event, the special circumstance instructions also required the jury find defendant personally killed the victim or assisted in the commission of the killing. Indeed, defendant concedes the language in the special circumstance instructions "track[s] the language in the current version of section 189, subdivision (e)(2)." Defendant next argues the jury instructions may not have required the jury find defendant had an intent to kill at the time the victim was actually killed. We find no ambiguity in the instructions, which parallel section 189, subdivision (e)(2). The instructions required the jury find defendant "with the intent to kill, actually killed, or with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree." (CALJIC No. 8.80.1.) Finally, defendant suggests her appointed appellate counsel improperly summarizes the underlying facts from our prior opinion. We find no reversible error because the trial court specifically declined to consider the factual summary from our prior opinion and stated it reached its conclusion "[w]ithout reviewing

11

the facts underlying [defendant's] conviction . . . ." Defendant's contentions raise no arguable issues for reversal.

## DISPOSITION

The postjudgment order is affirmed.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.